IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 3:04-CR-170 |
| | ) | (PHILLIPS/SHIRLEY) |
| LARRY LIST, | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

This matter comes before the Court upon the defendant, Larry List's Motion To Suppress The Fruits of The Defendant's Proffer and Motion for a <u>Kastigar</u> Hearing [Doc. 44]. The defendant filed a Memorandum of Law in Support of the Motion [Doc. 45] and the government filed a response to the Motion [Doc. 64]. The parties further came before the Court for a hearing on the motion on February 10, 2005, but the matter was formally taken under advisement on February 17, 2005, following the filing of the government's supplemental filing under seal of certain grand jury testimony, which was requested by the Court and necessary for resolution of this Motion. The government was represented by Assistant United States Attorney Hugh Ward ("AUSA Ward") and the defendant was represented by attorneys Ralph Harwell and Tracy Smith. The defendant was also present.

**I. POSITIONS OF THE PARTIES**

Defendant's motion seeks to suppress the fruits of the defendant's prior statement made to federal authorities and asks for a <u>Kastigar</u> Hearing to determine the admissibility of all evidence except that in possession of the government prior to May 21, 2004. The defendant argues that he was originally charged with attempt to possess with intent to distribute the kilogram of

cocaine in issue (i.e., the kilogram received by the defendant on November 20, 2001, and the subject of defendant's other suppression motion and the Report and Recommendation [Doc. 101] filed by this Court) and with possession of a firearm in furtherance of a drug trafficking offense.

        Defendant contends that AUSA Ward and defendant's counsel began negotiating about a possible plea agreement in the Spring of 2004, with AUSA Ward stating a willingness to dismiss the firearm charge and recommend a reduction in the defendant's sentence as to the cocaine charge, if the defendant assisted the government in investigating other people. The defendant contends that he was reluctant to enter into such a cooperation plea agreement because he might not know all that the government thought he knew and thus was concerned that he might not receive the recommendation of a sentence reduction. The defendant further contends that AUSA Ward then suggested that the defendant could offer a proffer or a summary of what he might say if he decided to assist the government, with the promise that nothing said during the proffer would be used against him in anyway and that after the proffer, the government would advise him if it felt the defendant could provide substantial assistance. Defendant contends that AUSA Ward promised that if the defendant was truthful in his proffer that the firearm charge would be dismissed. Defendant contends that he made his proffer on May 21, 2004, in reliance on such promises and that the defendant was advised by AUSA Ward that the government did believe the defendant was truthful and that he could be of substantial assistance. However, defendant contends that AUSA Ward later advised defendant's attorney that AUSA Ward's supervisors did not approve the dismissal of the firearm charge and that the agreement had been conditioned upon his supervisor's approval. Defendant further contends that AUSA Ward then stated that the defendant would either have to plead to the Indictment or go to trial on December 13, 2004. However, defendant states that on

2

December 2, 2004, the defendant was arrested on a new Indictment, which included the previous charges plus a new charge that defendant was participating in a conspiracy to distribute marijuana and cocaine. Defendant contends that the government's primary evidence of a conspiracy is a taped statement given by defendant on November 19, 2001, and the defendant's proffer. The defendant contends that his co-defendants have been provided with both the taped statement and a copy of the defendant's proffer and he argues that this was done to get the co-defendants to testify against defendant List.

Defendant asserts that his proffer has been and will be used against him in violation of his agreement with the government and moves the Court for a hearing pursuant to Kastigar v. United States, 406 U.S. 441 (1972), to determine the admissibility of evidence coming into the possession of the government on or after the date of the proffer of May 21, 2004.

The government argues in its response [Doc. 64] to defendant's Motion, that the defendant's argument appears to be that the government violated an agreement with the defendant by providing a copy of the proffer as discovery to co-defendants. The government argues that such statement was provided to co-conspirators per the Court's Order on Discovery and Scheduling [Doc. 8], and per Sixth Circuit Case law, citing United States v. Holmes, 975 F.2d 275, 284 (6th Cir. 1992).[1]

The government alleges the defendant waived any right to challenge the derivative use of any evidence obtained from him during the proffer. The government argues that the

---

[1]AUSA Ward at the hearing on the motion did concede that the disclosure of defendant's statement to the co-defendants was probably not required under the Court's Order or the case cited but contended that it was not prohibited and was simply provided as additional discovery beyond that required.

defendant appeared before government agents to make his statement on May 21, 2004, but contends that such appearance was pursuant to a letter from AUSA Ward to defendant's attorney on April 21, 2004, which set forth the "ground rules" for defendant's proffer. Further, the government points out that the letter/agreement included the following statement:

> "Second, the government may make derivative use of and may pursue any investigative leads suggested by any statements or other information provided by your client. This provision is necessary in order to eliminate the necessity for a <u>Kastigar</u> hearing at which the government would have to prove that the evidence it would introduce at trial is not tainted by any statements or other information provided by your client during the proffer or discussion."

As previously noted, a hearing was held on this matter and other motions, on February 10th and 11th, 2005. During argument regarding this particular motion, AUSA Ward stated emphatically that the April 21, 2004 letter constituted the understanding and the entire understanding of the agreement between the government and defendant and his counsel. AUSA Ward indicated that the letter constituted the sum total of the contract. Further, AUSA Ward contended that he was operating pursuant to the terms of this agreement when the defendant gave his proffer and it was his understanding and intent that this letter controlled that proffer. He further stated that he would not have undertaken the proffer without the terms of this letter binding the parties.

Defense attorney Harwell on the other hand was unclear and ambiguous regarding this letter and, despite its importance to this issue, stated that he assumed that he received the letter but could not remember. He later confirmed that he believed that he did get the letter and confirmed that he did not object to the letter. He also noted that while neither he nor his client signed the letter, that he believed that he had covered it with his client. Finally, he noted that he could understand how the government would believe both that he had agreed to the letter and that this letter was the

4

agreement. He also conceded that there were no other writings on this issue besides the letter of April 21, 2004.

It is the finding and holding of this Court that the letter of April 21st, does constitute the agreement between the parties and even though not signed by the defendant List or his attorney Harwell, that the parties were operating pursuant to the terms of this agreement when defendant List made his proffer. If this agreement were not the agreement between the parties, then this Court would find that there was no agreement and no agreed upon terms or conditions between the parties at the time Mr. List made his statement.

After reviewing the parties filings and conducting a hearing on this matter and reviewing the law, it appears to the Court that the parties are perhaps blending two different legal concepts regarding different types of non-prosecution agreements between the government and a defendant.

The first type of non-prosecution agreement that can occur, is an agreement by the government to a formal grant of statutory immunity pursuant to 18 U.S.C. § 6001, et seq. In this instance, the defendant is compelled to testify and give up his Fifth Amendment right against self incrimination but is granted immunity in return. The immunity granted may be either what is commonly referred to as "use" immunity or "transactional" immunity. Generally, "use" immunity is an agreement by the government not to directly use and/or make derivative use of, whatever information the defendant provides pursuant to such immunized testimony. On the other hand, "transactional" immunity is an agreement by the Court not to prosecute the defendant at all for any offense which is related to the immunized testimony. See United States v. Turner, 936 F.2d 221, 223 (6th Cir. 1991).

Under such a formal grant of statutory immunity, the witness is essentially compelled to provide testimony but is protected to the extent of the immunity provided. If the immunity provided is "use" immunity, the government is barred from prosecuting such defendant through the use of such compelled testimony either directly, or indirectly (i.e., derivatively). In the latter instance, the government is precluded from derivatively using the defendant's immunized testimony to develop investigatory leads or to derive evidence for use against the defendant from defendant's testimony. Rather, the government can only use evidence derived from "legitimate independent sources." Often there arises a dispute as to whether the government's evidence was obtained from "legitimate independent sources" or was derived from the defendant's immunized testimony. In such cases, a pretrial determination of such issues is made pursuant to what is referred to as a Kastigar hearing. This hearing is named for and based on the Supreme Court case enunciating the "independent source rule." The purpose of the hearing is to determine if the government's evidence is "tainted" by, or traceable to, the defendant's immunized testimony or if it was rather independently obtained and/or discovered evidence derived from legitimate sources. In this type of a hearing, the burden of showing an independent source is on the government and is often referred to a "heavy" burden. Id. at 224.

The second type of non-prosecution agreement is an "informal" grant of immunity to a defendant. This grant can also be either "use" or "transactional" in nature. While this type of agreement is similar to the preceding first type, it does not involve compelled testimony nor a formal grant of statutory immunity. Rather, the "informal" grant of immunity results from agreements between the government and the defendant. These are often, as in the case herein, contained in letters. In these type of cases, the analysis is somewhat different as the informal grant is viewed as

6

contractual in nature and the analysis is made pursuant to the application of contract law and rules regarding breach of contract. Further, the "immunity" granted isn't really immunity, but a promise based on the terms of the agreement. As such, the parties are each bound by the terms of the agreement reached including the remedies for its breach, if any, specified by the terms of the agreement. United States v. Fitch, 964 F.2d 571, 576 (6th Cir. 1992).

In this case, I find and hold that the matter before the Court deals with the second type of non-prosecution agreement. I find that the agreement did not constitute, and the proffer was not pursuant to, a formal grant of statutory immunity requiring compelled testimony by the defendant. The parties agree that this matter does not involve a formal grant of statutory immunity or compelled testimony.

Rather, I find that there was an informal grant of <u>limited</u> "use" immunity pursuant to the terms of the agreement contained in the April 21, 2004 letter from AUSA Ward to defense attorney Harwell. As such, the legal analysis will be made by evaluating this matter under a contract law analysis.

Where a defendant is

not granted statutory immunity under 18 U.S.C. § 6002, . . . the protections that are provided to a witness who testifies pursuant to such immunity are not applicable. United States v. Turner, 936 F.2d 221, 223-24 (6th Cir. 1991) (noting that unlike informal immunity, a grant of statutory immunity pursuant to 18 U.S.C. § 6002 "assures a witness that his immunized testimony will be inadmissible in any future criminal proceedings as will any evidence obtained by prosecutors directly or indirectly as a result of the immunized testimony.")

United States v. Orlando, 281 F.3d 586, 594 (6th Cir. 2002).

Kastigar, supra, involved an interpretation of 18 U.S.C. § 6001, et seq. and its requirement of compelled testimony against the Fifth Amendment prohibitions against compelled

7

self incrimination and related to use and derivative use of evidence in a subsequent prosecution of a person who had been granted such formal statutory immunity. In the present case, there was no actual immunity granted to defendant by AUSA Ward. Arguably, AUSA Ward would not have authority to grant such immunity unless he complied with the requirements of the federal immunity statute 18 U.S.C. § 6002. See United States v. Brothers, 856 F.Supp 380, 383-84 (M.D. Tenn. 1993). Rather, defendant only received the promises made by the government in the April 21, 2004 letter, and "'[s]uch promises are contractual in nature . . . . This is in contrast to a formal grant of immunity . . . [and] the court [is] not required to hold a Kastigar hearing with regard to "immunity" granted . . . by the federal prosecutor.'" Id., (quoting Turner, 936 F.2d at 223-224). Since the testimony by the defendant herein was neither compelled nor subject to a formal grant of statutory immunity, I find and hold that the defendant is not entitled to a formal Kastigar hearing.

Defendant nonetheless argues that he is entitled to a Kastigar like hearing, which would still require the government to affirmatively approve, subject to a heavy burden, that none of the evidence to be introduced at trial was derived directly or indirectly from the defendant's statements and that no derivative (or non-evidentiary) use was made by the government of such statements. It appears to the Court that had the parties made an informal agreement providing the defendant with full "use" immunity, including derivative use immunity and/or transactional immunity, then an argument could be made that a "Kastigar-like" hearing should be held, as the promises made in such an informal agreement would be identical to the formal statutory immunity granted in Kastigar type cases.

However, in this case the government's letter of April 21, 2004, was clear in its statement that the letter constituted the "ground rules" for the proffer and was equally clear that it

8

did not promise full use immunity, including derivative immunity, and to the contrary, was very limited and specifically reserved the right to make derivative use of any statement or other information provided by the defendant in his proffer. Further, the letter specifically made note that this reservation was made for the very purpose of eliminating "the necessity for a Kastigar hearing."[2]

Thus, under the case law and in construing the actual terms of the agreement herein, there is no basis for a "Kastigar-type" hearing in this case.

While the proffer letter establishing the "ground rules" was no doubt intended to be signed by both the defendant and his attorney, parties can be bound by terms of an unsigned contract when their actions or conduct indicate assent to it's terms. See 17 C.J.S. Contracts § 48 (1999); Jerry T. Beech Concrete Contractor, Inc. v. Larry Powell Builders, Inc., No. M2000-01704-COA-R3-CV, 2001 WL 487574 (Tenn. Ct. App. May 9, 2001).

Likewise

> [i]t is a fundamental tenet of contract law that a legal binding contract can be implied "from the circumstances and conduct of the parties." [Citations omitted]. In "circumstances which according to the ordinary course of dealing and the common understanding of men, show a mutual intention to contract" a contract implied-in-fact arises. [Citations omitted]. "An implied-in-fact contract is one that is 'founded upon a meeting of minds which although not embodied in an express contract, is inferred, as a fact, from the conduct of the parties showing, in the light of the surrounding circumstances.'" [Citations omitted]. "Hence the distinctive feature of an in fact contract is that it is implied from conduct and circumstances; aside from this there is no difference between an express and an implied contract."

---

[2]In United States v. Brothers, supra, the District Court stated in language applicable to this case: "Similarly, the letter which established the ground rules for the proffer given by Mr. Brothers to the attorneys for the Middle District of Tennessee clearly states that '[t]he government may make full use of derivative information obtained as a result of the proffer.'" Id. at 385-86. The Court later held that the defendant "cannot now complain that he is being held to the terms of his bargains." Id. at 386.

9

Contship Containerlines, Inc. v. Howard Industries, Inc., 309 F.3d 910, 912 (6th Cir. 2002) (with numerous Sixth Circuit citations contained therein).

Further, in this case the defendant has not established that the parties at the time of the making of the proffer, were operating under any agreement or terms other than those contained in the letter of April 21, 2004.

Thus, I find that under a contact law analysis, the actions and conduct of the defendant and defendant's attorney in receiving the April 21, 2004 letter, "covering" it's terms together, making no objections or proposed modifications to it, and proceeding to the proffer where the interview was made pursuant to that agreement[3], with the knowledge that the government was operating under it's terms and conditions, all constitute action and conduct indicating assent to the terms and conditions in the letter and constituted mutual intent to be bound there by. At the very least, there was an implied-in-fact agreement.

Therefore, the defendant's arguments that the government may have made derivative use of his proffered statements are unavailing as he is bound by the terms of the agreement contained in the letter which clearly permitted the government to do exactly that. The defendant cannot now be heard to complain about the very terms to which he agreed. Furthermore, the Court notes that the defendant has not even pointed to any derivative use of his proffered statement made by the government upon which this Court could rule.

---

[3] Although the actual proffer statement is filed under seal, the defendant has averred that the co-defendant's have also received copies of that proffer and thus all the parties are aware of it's contents. Nonetheless, the Court will not disclose such contents except to note that in its preface, that it is clearly stated the proffer is made pursuant to the proffer agreement prepared by the United States Attorney's Officer. Both attorneys agreed that there was no other writing evidencing an agreement other than the April 21, 2004 letter.

10

The defendant further argues that the letter agreement prohibited the direct use of the defendant's statements against him and that the government has violated that part of the agreement by 1) providing information of defendant's proffer to the grand jury leading to his Indictment and 2) providing a copy of the proffer to co-defendants. I conclude that the defendant is in error with regard to each of these arguments.

First, the letter agreement did not provide a blanket prohibition against direct use. Rather, it specifically stated that:

> "First, except as provided below, no statements or other information provided by your client during the proffer or discussion will be used <u>as evidence</u> against your client in any criminal case in or involving the Eastern District of Tennessee . . ."

(Emphasis added).

Therefore, the limitation on the use of any proffered statements is only the agreement not to use the statement <u>as evidence</u> against the defendant. Arguably while this could include use in a grand jury proceeding, it would not relate to the providing of the statement to co-defendants as discovery materials.

However, with regard to the grand jury argument, defendant's counsel apparently argues that this relates to the earlier grand jury that initially indicted the defendant. However, the short answer to that argument is that the defendant is before this Court on a Superseding Indictment presented by a new grand jury on February 1, 2005, and thus this would be the only one in issue. The defendant's attorney stated that he was concerned that the defendant's proffer may have been directly used or introduced at the new grand jury or that specific reference may have been made to it, including concern that a specific reference to a specific person (who was identified at the hearing) may have been made in violation of the agreement. The government through AUSA Ward

11

contended that such did not occur. However, because the agreement was not to directly use the proffered testimony <u>as evidence</u> (except as provided in the last paragraph which would be applicable at trial but not herein), the Court felt that it should review such grand jury testimony in camera to see if there was any indication of such direct use. The government supplemented its filings and provided the Court with the February 1, 2005 grand jury transcript under seal. After careful review, the Court feels that it is clear that the proffer made by defendant List was not used as evidence, in any way, during the grand jury proceeding, nor was the identified person in issue ever referenced in that grand jury proceeding. Therefore, defendant's argument in this regard is found to be without merit.

With regard to the second argument, regarding the providing of a copy of the proffer to co-defendants, the Court finds that such action does not constitute a breach of this agreement. First, the providing of such document as criminal discovery does not constitute use <u>as evidence</u> in a criminal case. Second, there could not have been an agreement nor a meeting of the minds between the parties regarding the providing of the proffer as discovery to co-defendants at the time of the letter/agreement in April 2004, or at the time of the proffer in May 2004, for the simple reason that there were no co-defendants until November 2004. Accordingly, defendant's argument in regard to this issue is likewise without merit.

## **CONCLUSION**

After carefully considering all the pleadings, including supplemental filings, exhibits, and the evidence introduced and arguments made during the course of the hearing, and after reviewing the relevant legal authorities, it is clear to the undersigned that there is no basis to suppress any evidence as fruits of the defendant's proffer and no basis for holding a <u>Kastigar</u> hearing in this case. For the reasons set forth herein, it is **RECOMMENDED** that defendant's Motion to Suppress Evidence [Doc. 44] be **DENIED**.[4]

Respectfully submitted,

   s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[4] Any objections to this report and recommendation must be filed with the clerk of the court within ten (10) days of receipt of this notice. Such objections must conform to the requirements of Rule 72(b), Fed. R. Civ. P. Failure to file objections within the specified time waives the right to appeal the district court's order. See Thomas v. Arn, 474 U.S. 140 (1985). The District Court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).